907 F.2d 1140
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
In re UNITED STATES of America, Plaintiff-Appellee,
v.
Hans Peter ALBRECHT, Defendant,
Martha F. Mims, Surety, Defendant-Appellee.
Ex parte Otis Allen JEFFCOAT, III, As Receiver of the Assets
of Martha F. Mims, Petitioner-Appellee,
v.
William Kenneth MIMS, Respondent-Appellant.
 No. 89-7663.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 12, 1990.
Decided June 12, 1990.
 
 Appeal from the United States District Court for the District of South Carolina, at Charleston. Charles W. Gambrell, United States Magistrate. (CA-89-1264)
 Deborah R.J. Shupe, Columbia, S.C. (Argued), for appellant; Victoria L. Eslinger, Columbia, S.C., on brief.
 Gregory Michael Smith, Sr., Myrtle Beach, S.C.; John Berkley Grimball, II, Assistant United States Attorney, Columbia, S.C. (Argued), for appellees; Otis Allen Jeffcoat, III, Myrtle Beach, S.C; E. Bart Daniel, United States Attorney, Herbert W. Louthian, Columbia, S.C., on brief.
 D.S.C.
 REVERSED AND REMANDED.
 Before K.K. HALL and SPROUSE, Circuit Judges, and RICHARD B. KELLAM, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 William Kenneth Mims appeals from the action of the district court ordering the parties to seek a stay of an action in a North Carolina state court. Holding the district court's action violative of the Anti-Injunction Act, 28 U.S.C. Sec. 2283, we reverse.
 
 
 2
 Martha Mims owned a bail bond business. While married to Martha Mims, William Mims was an employee of the business for a period. The couple divorced in 1979. Afterward, Martha Mims became liable on a number of bonds due to the failure of several criminal defendants to meet bail conditions. In 1981, the United States obtained a joint and several judgment against Martha Mims and one Hans Peter Albrecht for $500,000. In November 1981, the District Court of South Carolina appointed a receiver over the assets of Martha Mims, naming Otis Allen Jeffcoat, III, to that position. The purpose of the receivership was to protect the government's interest in its judgment.[1]
 
 
 3
 Martha and William Mims possess title to a condominium at a North Carolina ski resort as tenants in common. In the spring of 1987, Jeffcoat filed an action in a North Carolina state court seeking involuntary partition of the condominium and declaratory judgment that the receiver is entitled to all proceeds from the sale of the property.[2] William Mims filed a counterclaim asserting equitable interest in the entire property based on a resulting trust theory--he alleges that all of the monies used to purchase the property had been owed to him by Martha Mims for commissions he had earned working for the bail bond company. In late 1988, Jeffcoat and William Mims reached a settlement agreement which Mims subsequently disavowed because the terms purportedly were not those which he had instructed his attorney to include in the agreement. At this point Mims also successfully moved to intervene in the federal receivership based in South Carolina.
 
 
 4
 In January 1989 Jeffcoat petitioned the supervising federal magistrate[3] in the South Carolina receivership proceeding to decide the merits of Mims' claim against the condominium and to stay the North Carolina state proceedings. After a hearing, the magistrate ordered the parties to seek a stay in the North Carolina state court "until all reasonable efforts to negotiate a settlement of [William Mims'] claim against the receivership have been pursued in good faith." Mims excepted, and the magistrate found his exceptions lacking sufficient merit to reopen the matter. Mims then appealed to this court.
 
 
 5
 Title 28, United States Code, section 2283, commonly referred to as the Anti-Injunction Act, states:
 
 
 6
 A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.
 
 
 7
 We agree with Mims that the magistrate's direction to the parties to seek a stay of the North Carolina action violated the Anti-Injunction Act. Although the order facially was directed to the parties, there is no question but that it was in effect an injunction of the state court.[4] See Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs, 398 U.S. 281, 287 (1970); Alton Box Board Co. v. Esprit de Corp., 682 F.2d 1267, 1271 (9th Cir.1982).
 
 
 8
 The receiver and the government argue that the issuance of the stay order was a valid exercise of the federal magistrate's authority under one of the statutory exceptions to the Anti-Injunction Act, viz., it was issued to protect a judgment of the district court. They also argue the stay was permissible under the judicially-created Leiter exception wherein a federal court may issue an injunction against a state court action where it is necessary to aid in the enforcement of federal rights. Leiter Minerals, Inc. v. United States, 352 U.S. 220, 225-26 (1957). Jeffcoat argues, moreover, that since the receiver had jurisdiction of the res under 28 U.S.C. Sec. 754, it should be able to complete the litigation over that res in the federal district court as part of the receivership proceedings.
 
 
 9
 We do not agree and we think one central conclusion disposes of all three contentions. In our view nothing needed to be done in the North Carolina state action to protect the government's $500,000 judgment. The judgment was secure, and the receiver was gathering all of Martha Mims' assets to apply to the satisfaction of the judgment. The receiver was entitled to Martha Mims' share of the North Carolina condominium. The issue in the North Carolina court related not to the government's previously obtained judgment but to the question of the extent of Martha Mims' share in the condominium. Whatever share that may be will be applied towards satisfaction of the government's judgment.
 
 
 10
 There is no contention that the North Carolina court is not as capable as the federal court in South Carolina of apportioning the condominium between that rightfully belonging to Martha Mims and that belonging to William Mims, particularly since the resulting trust issues will be decided under North Carolina law. The receiver evidently was convinced of that for it was he, with the magistrate's approval, who had initiated the action in the North Carolina state court. In any event, after the North Carolina court resolves the partition litigation, the government's interest in Martha Mims' share will be as well-protected as it would were the partition issues to be resolved in the federal district court. The only difference is that a state court instead of a federal court will be superintending litigation involving state substantive rights.
 
 
 11
 Therefore, we find that the order enjoining the parties to seek a stay of the North Carolina state proceeding was in violation of the Anti-Injunction Act, and we reject appellees' argument that the stay fell under one of the exceptions to that Act. Nor do we find merit to the appellees' contentions that Mims is barred from contesting the stay order by estoppel or waiver.
 
 
 12
 In view of the above, the judgment of the district court is reversed and remanded for actions consistent with the views expressed in this opinion.
 
 
 13
 REVERSED AND REMANDED.
 
 
 
 [1]
 The State of South Carolina and the County of Horry, South Carolina, also have outstanding judgments against Martha Mims, and the receiver was directed to apply Martha Mims' assets to those judgments as well as the United States' judgment
 
 
 [2]
 Jeffcoat collected the rents and managed the property between 1981 and 1988. Apparently during much of that time William Mims was in prison on charges unrelated to this action
 
 
 [3]
 Pursuant to 28 U.S.C. Sec. 636(c)(1), the magistrate was designated to exercise full jurisdiction over the receivership proceedings
 
 
 [4]
 The consequent order of the North Carolina court recites, "The claim has been stayed by a Court of the United States."